# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF WEST VIRGINIA
## CLARKSBURG DIVISION

ATAIN SPECIALTY INSURANCE COMPANY, Individually and a/s/o Genesis Partners Limited Partnership, Ann's Run Limited Liability Company, HLC, LP, SVR One, LLC, Five-J Energy, LLC, Julia C. Compton Trust 2003, and James and Jennifer Corton,

    Plaintiff,

v.

WESTFIELD INSURANCE COMPANY.,

    Defendant.

_____/

ELECTRONICALLY FILED
12/24/2025
U.S. DISTRICT COURT
Northern District of WV

CASE NO: 1:25-cv-125 Kleeh

## COMPLAINT FOR DAMAGES

The Plaintiff, ATAIN SPECIALTY INSURANCE COMPANY, ("Atain"), for itself and as subrogee of its insureds, files this Complaint for equitable contribution, equitable subrogation, and breach of contract against the Defendant, WESTFIELD INSURANCE COMPANY ("Westfield"), and in support, states:

### NATURE OF ACTION

1. This is an action for equitable contribution, equitable subrogation and breach of contract against the Defendant, Westfield arising out of an underlying consolidated lawsuit for which Atain and Westfield had joint obligations to their mutual insureds to defend and indemnify the insureds in the consolidated lawsuit (the "Underlying Lawsuits"). Westfield breached its obligations to the parties' mutual insureds, which resulted in Atain paying in excess of its share of potential liability to the parties' mutual insureds.

**JURISDICTION AND VENUE**

2.  Diversity jurisdiction under 28 U.S.C. § 1332 exists as this matter has been brought by the plaintiff, a Michigan corporation with its principal place of business in Michigan, against the defendant, an Ohio corporation with its principal place of business in Ohio, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3.  Venue is proper in this district because the events giving rise to the claim occurred in this district and in the division of this Court. 28 U.S.C. § 1391(a)(2) (2025). More specifically, this is the district where the underlying lawsuit was venued.

4.  All conditions precedent have occurred, have been performed, or have been waived.

**THE PARTIES**

5.  The plaintiff, Atain, is a Michigan corporation with its principal place of business in Michigan. Atain is an authorized surplus lines insurance company under West Virginia law, and issued several Commercial General Liability ("CGL") Policies to Genesis Partners Limited Partnership ("Genesis"), Ann's Run Limited Liability Company ("Ann's Run"); HLC, LP ("HLC"); SVR One, LLC ("SVR"); Five-J Energy, LLC ("Five-J"); Julia C. Compton Trust 2003 ("Trust"); and James A. Corton and Jennifer Corton (the "Cortons") (collectively the "Genesis Entities").

6.  The Defendant, Westfield is an Ohio corporation with its principal place of business in Ohio. Westfield also issued an insurance policy or policies to the Genesis Entities.

**COMMON ALLEGATIONS**

7.  ***THE UNDERLYING LAWSUITS:*** A pair of homeowners in a duplex that was developed, constructed, marketed, or sold by the Genesis Entities filed separate lawsuits against the Genesis Entities and others, identified as *Barrick v. Genesis Partners, LP, et al.* (Case No. 22-C-147-1) (the "*Barrick* Lawsuit") and *Criss v. Genesis Partners, LP, et al.* (Case No. 22-C-152-1)

(the "*Criss* Lawsuit"), both were filed in Harrison County, West Virginia. The *Barrick* and *Criss* Lawsuits were consolidated (hereinafter the "Underlying Lawsuits"). The complaints in the *Barrick* and *Criss* Lawsuits are attached as Exhibits "A" and B," respectively.

8.  The *Barrick* Lawsuit alleges that in or around July 2016, S&A and/or Ann's Run contracted to sell a newly and previously constructed duplex in the Parkview Village of Charles Pointe to Mr. Barrick.

9.  The *Barrick* Lawsuit alleges that pursuant to the contract, S&A provided a 10-year limited warranty. The *Barrick* Lawsuit alleges that on or about August 25, 2016, Ann's Run executed a deed transferring the subject house to Mr. Barrick. The *Barrick* Lawsuit alleges that the house was built pursuant to a contract between S&A and Ann's Run.

10. The *Criss* Lawsuit alleges that in or around February 2017, S&A and/or Ann's Run contracted to sell a newly and previously constructed duplex (the other half of the Barrick Duplex) in the Parkview Village of Charles Pointe to the Crisses.

11. The *Criss* Lawsuit alleges that pursuant to the contract, S&A provided a 10-year limited warranty. The *Criss* Lawsuit alleges that on or about March 22, 2017, Ann's Run executed a deed transferring the subject house to the Crisses. The *Criss* Lawsuit alleges that the house was built pursuant to a contract between S&A and Ann's Run.

12. The Underlying Lawsuits allege that after the Plaintiffs moved into their homes, they started noticing cracks in the drywall and other issues that they asked S&A to fix.

13. The Underling Lawsuits allege that the issues were not remedied, or were not remedied completely. The Underlying Lawsuits allege that in the Fall of 2020,

14. The Underlying Lawsuits allege that in or around the Fall of 2020, the Plaintiffs identified issues with the building that were ongoing and expanding, including: (a) cracks in the

basement walls which have expanded in size over time and continue to expand, (b) heaving in the garage floors of the Barrick Home and the Criss Home, (c) cracking in the garage floors of both homes which have expanded in size over time and continue to expand, (d) heaving and cracking on the front porch of the Barrick Home which have expanded in size over time and continue to expand, (e) heaving and cracking on the front porch of the Criss Home, (f) separation between the garage walls and the garage floor in both homes, (g) movement of the "marriage wall" that exists between the garage of the Barrick Home and the garage of the Criss Home, (h) bowing of the basement portion of the "marriage wall" that exists between the garage of the Barrick Home and the garage of the Criss Home, (i) additional cracking in the drywall of both homes which have expanded in number over time, and (j) significant cracking in the marriage wall separating the two homes at all levels of the homes which have expanded in size and number over time and continue to expand in size and number.

15. The complaints allege that the movement has caused additional issues with: (a) doors not fitting within the door frames, (b) cracking and separation of molding and door frames, (c) garage doors not closing flush against the garage floor, (d) compromise of the stone façade on both homes including stone become loose and falling out, (e) compromise of the siding on both homes, and (f) other issues, including a separation or heaving that has become observable at the roof line of both homes.

16. The complaints allege that in November 2020, S&A retained a company to conduct core sampling of the property, which revealed high levels of pyrite, rendering the property unsuitable for supporting the house, and the house structurally unsound. The complaints allege that the houses were constructed in a way that violated applicable plans, specifications, and codes, which were discovered between November 2020 and present. The complaints allege that the Crisses

experienced plumbing issues in December 2021 as a result of the house settling. The complaint alleges that all of the issues are ongoing and increasing in severity.

17. The complaints further allege that the issues impacting the houses have caused them anxiety, worry, stress, emotional distress, mental anguish, annoyance, inconvenience, and loss of use. The complaint also alleges that dealing with the problems to date have resulted in lost wages and other out-of-pocket expenses. The claims asserted against the Genesis Entities are for Breach of Contract (Count Nine) and Negligence (Count Ten). The claims against the Genesis Entities relate to the sale of property containing pyritic material which rendered the property unsuitable for building the houses at issue.

18. Through the course of discovery in the Lawsuits, it was ascertained that the alleged cracking in the Barrick house first manifested in December 2016, when Barrick complained to S&A about the cracks in the premises.

19. Criss also alleges that he noticed cracking not long after moving in in early 2017.

20. ***THE ATAIN POLICIES:*** Atain issued five successive CGL Policies to the Genesis Entities: Policy No. CIP226077, effective July 28, 2017 through July 28, 2018 (the "2017-18 Policy"); Policy No. CIP226107, effective July 28, 2018 through July 28, 2019 (the "2018-19 Policy"); Policy No. CIP226137, effective July 28, 2019 through July 28, 2020 (the "2019-20 Policy"); Policy No. CIP226181, effective July 28, 2020 through July 28, 2021 (the "2020-21 Policy"); and Policy No. CIP226236, effective July 28, 2021 through July 28, 2022 (the "2021-22 Policy") (collectively, the "Atain Policies"). The Atain Policies each provide limits of liability for covered claims of $1,000,000 per occurrence with a general aggregate limit of $2,000,000. True and correct copies of the CGL coverage parts of the Atain Policies are attached as Composite Exhibit "C."

21. The Atain Policies' main insuring agreement is provided in Form CG 00 01 04 13, which provides, in pertinent part:

**SECTION I – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result…

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period…

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS** …

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. …

**SECTION V—DEFINITIONS**

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. …

16. "Products-completed operations hazard":

    a.    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        (1)    Products that are still in your physical possession; or

        (2)    Work that has not yet been completed or abandoned. However,
"your work" will be deemed completed at the earliest of the following times:

            (a)    When all of the work called for in your contract has been completed.
            (b)    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
            (c)    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete will be treated as completed.

17.    "Property damage" means:

    a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. …

21.    "Your Product":

    a.    Means:

        (1)    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            (a) You;
            (b) Others trading under your name; or
            (c) A person or organization whose business or assets you have acquired; and

      b.    Includes:

          (1)    Warranties or representations made at any time with respect to the fitness, quality or durability, performance or use of "your product"; and

          (2)    The providing of or failure to provide warnings or instructions.

22.    "Your work":

      a.    Means:

          (1)    Work or operations performed by you or on your behalf; and

          (2)    Materials, parts or equipment furnished in connection with such work or operations.

      b.    Includes:

          (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

          (2)    The providing of or failure to provide warnings or instructions. …

(Composite Exhibit C, Form No. CG 00 01 04 13).

    22.    The Policies include Form No. No. AF 001 007 04/ 2016, titled "Combined Coverage And Exclusions Endorsement," which provides, in pertinent part:

**XII.    AMENDMENT OF OTHER INSURANCE ENDORSEMENT**

It is agreed that Section IV — Commercial General Liability Conditions, Paragraph 4. is replaced in its entirety with the following:

This insurance is excess over any other insurance whether primary, excess, contingent or on any other basis that is available to any insured. You are required to give notice of claim to all "potential insurers" within thirty days of giving notice of claim to us.

> We have no duty under Coverage A or B to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to your rights against all those other insurers.
>
> We will pay only our share of the amount of loss, if any, that exceeds the sum of:
>
> (a)   The total amount that all such other insurance would pay for the loss in absence of this insurance; and
>
> (b)   The total of all deductible and self-insurance amounts under all such insurance.
>
> "Potential Insurers" means all insurance companies who may be obligated to defend any insured as either a named insured or an additional insured. …

(Composite Exhibit C, Form No. AF 001 007 04/ 2016).

23.   ***THE WESTFIELD POLICY:*** On information and belief, Westfield issued a policy of insurance to the Genesis Entities, with an effective date of July 28, 2016 through July 28, 2017 (the "Westfield Policy"). Despite repeated requests for a copy of the Westfield Policy by Atain, none has been provided to date.

24.   On information and belief, the Westfield Policy contains the same limits of insurance as the Atain Policies.

25.   On further information and belief, the Westfield Policy contains the same or similar terms and conditions as set forth in Form No. CG 00 01 04 13 of the Atain Policies as set forth in paragraph 21 above.

26.   ***DEFENSE AND SETTLEMENT OF UNDERLYING LAWSUITS:*** Atain agreed to defend the Genesis Entities under a reservation of rights, including but not limited to a reservation of rights concerning the Policies' "Other Insurance" Conditions. A copy of Atain's reservation of rights letter is attached as Exhibit "D."

27. Although the Underlying Lawsuits were not specific as to when the alleged damages first manifested, through the course of discovery it was learned that Barrick first discovered cracks on his property in December 2016 and Crisses first noticed their alleged damages in early 2017.

28. Based on this information, the Genesis Entities, through Atain's coverage counsel, tendered the Underlying Lawsuits to Westfield, as the damages appeared to have first occurred during the Westfield Policy. A copy of the initial tender is attached as Exhibit "E."

29. Westfield responded to the tender via its counsel on January 17, 2024, taking issue with the tender coming from Atain's counsel. Westfield also asserted that the tender of the Underlying Lawsuits was late, and also asserted that the Underlying Lawsuits do not allege "bodily injury" or "property damage" caused by an "occurrence." A copy of Westfield's letter is attached as Exhibit "F."

30. On January 30, 2024, the Genesis Entities' counsel responded to Westfield's January 17, 2024 letter and formally tendered the Underlying Lawsuits to Westfield for a defense and indemnification. A copy of the Genesis Entities' tender and response is attached as Exhibit "G."

31. Westfield never issued a formal disclaimer to the Genesis Entities' tender.

32. Further, while claiming that notice of the Underlying Lawsuits was not timely made, Westfield could not assert it was unduly prejudiced by such a lack of notice because it had intervened and was participating on behalf of another party to the Underlying Lawsuits, and therefore had adequate means to protect its own interests and those of the Genesis Entities.

33. Additionally, Westfield's contention that the alleged construction defects in the Underlying Lawsuits do not qualify as an "occurrence" is not supported by, and is contrary to West Virginia law. *See Cherrington v. Erie Ins. Prop. & Cas. Co.*, 745 S.E.2d 508, 521 (W. Va. 2013).

34. Further, because the damages alleged in the Barrick and Criss Lawsuits first occurred, in whole or in part during the Westfield Policy, Westfield had the sole obligation to defend or indemnify the Genesis Entities for the Underlying Lawsuits. Alternatively, Westfield had a joint obligation to defend the Genesis entities and was obligated to pay its *pro rata* share of the indemnity obligations to the Genesis Entities.

35. After the Underlying Lawsuits were tendered to Westfield, the parties to the Underlying Lawsuits and Atain undertook to settle the Underlying Lawsuits.

36. Westfield was made aware of such settlement efforts but failed or refused to participate in such settlement efforts.

37. The Underlying Lawsuits ultimately settled, with Atain paying $550,000 on behalf of the Genesis Entities. The settlement specifically excluded any release of Westfield for the Underlying Lawsuit and specifically preserved Atain's and the Genesis Entities' rights to pursue their respective claims against Westfield.

38. Atain subsequently demanded that Westfield reimburse it for the payments made on behalf of the Genesis entities as well as fifty percent (50%) of the defense costs incurred in defending the Underlying Lawsuits. A copy of Atain's demand is attached as Exhibit "H."

39. To date, Westfield has failed to respond to Atain's demand.

### COUNT I – EQUITABLE CONTRIBUTION

40. Atain incorporates paragraphs 1-39 as paragraph 40 of Count I.

41. Atain and Westfield were co-insurers to the Gensis Entities and each had an obligation to defend the Genesis Entities for the Underlying Lawsuits.

42. Because the alleged damages claimed in the Underlying Lawsuits first manifested during the Westfield Policy, Westfield in actuality had the sole obligation to defend or indemnify the Genesis Entities for the Underlying Lawsuits.

43.     Alternatively, Westfield had a joint obligation with Atain to defend and indemnify the Genesis Entities for the Underlying Lawsuits.

44.     Westfield breached its obligations to defend or indemnify the Genesis Entities in the Underlying Lawsuits. As a consequence, Atain paid more than its share of its obligation to defend the Genesis Entities and to settle the claims asserted against the Genesis Entities in the Underlying Lawsuits.

45.     Westfield owed at least 50% of the defense costs incurred by Atain in the Underlying Lawsuits and 100% of the settlement obligation of $550,000. Alternatively, Westfield owned its pro rata share of the $550,000 settlement.

WHEREFORE, Atain seeks judgment against Westfield in an amount equal to 50% oof the defense costs incurred in defending the Genesis Entities in the Underlying Lawsuit, and judgment in the amount of $550,000 or, alternatively for the amount of Westfield's *pro rata* share of the $550,000 settlement, as well as pre- and post-judgment interest, costs, as well as any other relief this Court deems equitable and just.

## COUNT II – EQUITABLE SUBROGATION

46.     Atain incorporates paragraphs 1-39 as paragraph 46 of Count II.

47.     Atain was not primarily responsible for the defense and indemnification of the Genesis Entities for the Underlying Lawsuits, as the alleged damages occurred during the Westfield Policy.

48.     Alternatively, Atain paid in excess of its share of the obligation to defend or indemnify the Genesis Entities for the Underlying Lawsuit.

49.     As a result of Westfield's failure to pay its share of the defense and indemnity obligations owed to the Genesis Entities, Atain paid to settle the claims against the Genesis Entities solely to protect their interests and not as a volunteer.

50. Atain's payment of the Genesis Entities' defense costs and the Genesis Entities' share of the settlement in the Underlying Lawsuits extinguished the Genesis Entities' liability to Barrick and the Crisses.

51. Atain was not the primary obligor to satisfy the defense of the Genesis Entities or to indemnify them for the Underlying Lawsuits. Westfield was the primary obligor or co-obligor.

52. Equitably subrogating the Genesis Entities' rights against Westfield to Atain will not unduly prejudice any party.

WHEREFORE, Atain seeks judgment against Westfield in an amount equal to 50% oof the defense costs incurred in defending the Genesis Entities in the Underlying Lawsuit, and judgment in the amount of $550,000 or, alternatively for the amount of Westfield's *pro rata* share of the $550,000 settlement, as well as pre- and post-judgment interest, costs, as well as any other relief this Court deems equitable and just.

## COUNT III – BREACH OF CONTRACT

53. Atain incorporates paragraphs 1-39 as paragraph 53 of Count III.

54. By payment in full of the Genesis Entities' settlement share in the Underlying Lawsuits, the Genesis Entities' rights are subrogated to Atain under the "Transfer of Rights of Recovery to Us" Conditions.

55. In failing to provide a defense to the Genesis Entities, Westfield breached its obligations under its Policy to defend the Genesis Entities for any "suit" to which its insurance applies.

56. Despite receiving notice of the Underlying Lawsuits, Westfield never formally disclaimed coverage for the Underlying Lawsuits, nor did it assume the Genesis Entities' defense. Westfield's non-response was a *de facto* breach of its defense obligations.

57. Further, despite receiving notice of opportunities to settle the Underlying Lawsuit, Westfield failed or refused to contribute its share towards the settlement of the Underlying Lawsuits.

58. Westfield's failure to indemnify the Genesis Entities, in whole or in part, was also a breach of the insurance contract it had with the Genesis Entities.

59. As a result of Westfield's breach of its insurance obligations to the Genesis Entities, the Genesis entities' rights for breach of contract were subrogated to Atain upon Atain's payment to settle in full the claims against the Genesis Entities in the Underlying Lawsuits.

WHEREFORE, Atain seeks judgment against Westfield in an amount of the defense costs incurred in defending the Genesis Entities in the Underlying Lawsuit, and judgment in the amount of $550,000 or, alternatively for the amount of Westfield's *pro rata* share of the $550,000 settlement, as well as pre- and post-judgment interest, costs, attorney's fees, as well as any other relief this Court deems equitable and just.

## **REQUESTED RELIEF**

**WHEREFORE**, Atain respectfully requests this Court:

a. Take jurisdiction over the parties and the subject matter;

b. Award Atain damages for fifty percent (50%) of the defense costs incurred in defending the Genesis Entities in the Underlying Lawsuits;

c. Award Atain damages in the amount of $550,000, or alternatively, in an amount equal to Westfield's *pro rata* share of the $550,000 settlement;

d. Award Atain all pre- and post-judgment interest, costs, and attorney's fees, as well as any other relief that this Court deems equitable, just, and proper: and

e. Atain demands a trial by jury on any claims for which a jury trial is permitted.

      Respectfully submitted,

      DICKEY MCCAMEY & CHILCOTE, P.C.

      <u>/s/ Rachel E. Lutz</u>
      Rachel E. Lutz (WV #14010)
      2001 Main Street, Suite 501
      Wheeling, WV 26003-2854
      P: 304-233-1022
      F:  888-811-7144
      E-mail: rlutz@dmclaw.com